ST. LOUIS, S. F. & T. RY. CO. v. WILSON.
(No. 9097.)

(Court of Civil Appeals of Texas. Dallas. May 10, 1924. Rehearing Denied June. 14, 1924.)

1. Master and servant ⬅289(35)—Car inspector's contributory negligence in failing to display blue flag held for jury.

Car inspector alleging switching crew's negligence in moving cars against train, about which he was working, to their knowledge, with such force as to move it such distance with such rapidity that he was knocked down before he could get out from between two cars, though brakes were securely set, *held* not precluded from recovering for injuries, as matter of law by failure to put out blue signals at end of train, in view of conflicting evidence as to whether such rule applied to employés making up train.

2. Master and servant ⬅243(1)—Violation of rule not negligence per se.

Servant's violation of rule promulgated by master, whether as to manner in which work

shall be done or for safety of servant, is not negligence per se; such rule not having force of statute.

**3. Trial ⚌365(1)—Jury's findings on special issues harmonized if reasonably possible.**

Jury's findings on special issues must be harmonized, if possible, by giving each reasonable construction in light of evidence on which based.

**4. Master and servant ⚌297(2)—Findings as to contributory negligence held not conflicting.**

In action for injuries to car-inspector from switching crew's negligence in moving cars against train being made up with such force as to move it considerable distance at such speed that plaintiff was knocked down before he could get out from between two cars, though brakes were securely set, jury's findings that plaintiff was negligent in failing to put out blue signals at end of train, and that such negligence was not proximate cause of injury, *held* not contradictory, so as to require that latter be disregarded and judgment entered for defendant, in view of evidence of switching crew's knowledge that plaintiff was coupling up air hose of train, and inapplicablity of blue flag rule to employés engaged in making up train.

**5. Damages ⚌132(9)—$25,915 for loss of leg by railroad car inspector held not excessive.**

$25,915 damages for severance of leg of 44 year old railroad car inspector, who was earning about $175 per month, *held* not excessive.

**6. Trial ⚌315—Verdict in amount of sum agreed on after ascertainment by division of aggregate amount suggested by jurors by 12 held not verdict by lot.**

Verdict in amount of aggregate sum of amounts suggested by members of jury, divided by 12, *held* not verdict by lot, in view of evidence that jurors agreed, after sum was ascertained in such manner, to fix damages in such amount.

**7. Trial ⚌351(5)—Refusal of special issues submitted in main charge not error.**

Refusal of special issues submitted in main charge is not error.

On Motion for Rehearing.

**8. Master and servant ⚌278(18)—Finding of switching crew's knowledge of car inspector's danger held supported by evidence.**

Evidence *held* sufficient to support finding that switching crew, moving cars against train being made up, was charged with knowledge that car inspector was coupling up air hose between cars in train.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by W. A. Wilson against the St. Louis, San Francisco & Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Goree, Odell & Allen, of Fort Worth, and Freeman, McReynolds, Hay & Wolfe, of Sherman, for appellant.

Randell & Randell, of Sherman, and Oscie Speer, of Fort Worth, for appellee.

JONES, C. J. Appellee, W. A. Wilson, in a suit in the district court of Grayson county, Tex., recovered judgment against appellant, St. Louis, San Francisco & Texas Railway Company, in the sum of $25,915, as damages for the loss of a lower limb while in the service of appellant. Appellee was 44 years of age at the time of his injuries, and was employed by appellant in its railway yards in the city of Sherman in the capacity of car inspector, and had been employed in such capacity at such place for a period of about 12 years. At the time of his injury appellee was working at night, and received the injury at about 4 o'clock on the morning of the 29th of September, 1921.

Freight train No. 532 came into the Sherman yards from the south at about 3 o'clock a. m. on the day of appellee's injury. It was scheduled to depart from said yards two hours later, and its destination was Frances, Okl. It was incumbent upon appellee, as a part of his duties, to inspect said train immediately after it came into said yards, and to designate any "bad order" cars that might be therein. After this inspection a switching crew "broke up" said train, taking out all bad order cars and all other cars that were not to go north in said train, and made up the train as "north-bound 532" on another track. This was done by placing at the rear portion of said train all through cars for the north that had come in as a part of said train from the south; also by placing in said portion of the north-bound train other through cars that were to go north as a part of same, and then complete this work by placing in said train all cars known as "shorts," that is, cars whose destination did not reach Frances. When said train came in from the south it consisted of about 40 cars, and when made up for the north it consisted of approximately the same number of cars, there being switched into it about the same number of new cars that had been taken out of the train upon its arrival from the south.

Just prior to No. 532 coming into the yards from the south certain cars already in the yards at Sherman had been placed on track No. 4 as a nucleus for the making up of the said north-bound train. The making up of the train then proceeded on said track by the switching crew placing with these other said cars the cars from the south-bound train that were to go north. These cars would be switched onto track No. 4 and into this north-bound train as the work of the breaking up of the train from the south progressed. It was the duty of appellee, after he had inspected the south-bound train, to go to the track where the north-bound train was being made up and couple up the air hose on each

of the cars on said train. In doing this work it was necessary for appellee to go in between the cars as they stood on the track. The brakes of these standing cars had been securely set when the cars were placed on track No. 4 as a part of the north-bound train. While appellee was in the performance of his duty in respect to coupling up the air hose a car taken from the south-bound train by the switching crew had been inadvertently thrown on track No. 4 and coupled into the cars of the north-bound train. This error was immediately discovered, and the foreman of the crew doing this work caused the crew at once to go in on track No. 4 with a number of cars that were attached to the switch engine and couple into this said car so as to remove it from said train and place it on its proper track. This string of cars was moved with great force, speed, and violence, and was thereby caused to strike the standing cars of the north-bound train with such force and violence as to move them a considerable distance, and with more or less rapidity, with the result that appellee, as he attempted to get out from between the cars of said north-bound train in which he was engaged in his said work, was knocked down and one of his lower limbs crushed in the foot and ankle by being run over by a wheel of one of the cars.

Appellee was removed to the hospital shortly after his injury, and, on that morning the greater part of the foot of the injured limb was amputated, the surgeon believing that the remainder of the limb could be saved. However, subsequent developments showed that this could not be done, and after about two weeks from the first operation another one was performed in which the limb was amputated some 5 or 6 inches below the knee. At the time this amputation was performed the two bones of the lower limb were the same length. At the time of the trial, however, the smaller bone of said limb was about three-quarters of an inch longer than the larger bone. This was due to the absorption of the amputated end of the larger bone, which appears to be more subject to absorption from such an amputation than is the smaller bone. Under this condition of an amputated limb, it is very probable that a third operation will be necessary before appellee can use with any success an artificial limb.

At the time appellee entered appellant's service as car inspector there had been promulgated a rule known as the "blue flag rule," and on May 25, 1909, appellee acknowledged, in writing, the receipt of a copy of such rule. This rule is as follows:

"A blue flag by day and a blue light by night displayed at one end of the engine, car or train, or displayed in center of track, indicates that workmen are at one or both ends of an engine, car or train, * * * under or about cars or trains on that track. When thus pro-

tected it must not be coupled to or moved. Workmen will display the blue signals, and same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals without first notifying the workmen."

At the time the string of cars was moved against the standing cars of said north-bound train, which movement resulted in appellee's injury, appellant's operatives moving said string of cars knew that appellee was engaged in his work of coupling up the air hose in said standing train. At no time from the beginning of the making up of said north-bound train was any blue signal displayed by appellee.

Appellee predicated his right to recover upon an allegation to the effect that appellant's switching crew, with knowledge that appellee was about and between the cars of the train being made up, and performing his duties in reference thereto, negligently caused these cars to be moved with great force and rapidity by moving against them the string of cars they were switching with great force, speed, and violence, and contrary to the usual and customary methods of moving against cars under like and similar circumstances.

It was appellee's theory, stated both in his pleading and in his testimony in the trial of the case, that, if the said string of cars had been moved against the cars about which he was working in the customary and usual manner that obtained in said yards under similar circumstances, these latter cars would either have been held stationary by their brakes or moved very slightly, and he would not have been injured. On the other hand, it was the theory of appellant on this phase of the case that appellee was guilty of negligence as a matter of law in going between said standing cars without having first displayed the blue signal; that this blue signal rule was made for his protection and, if its directions had been complied with on the occasion in question, appellant's switching crew would not have moved the said string of cars against the standing cars until appellee had been given notice and had put himself in a place of safety, and that, as appellee would not have been injured if he had observed said rule, his failure in this respect was necessarily the proximate cause of the injury. This theory appellant supported both by pleading and evidence.

Appellee, by supplemental petition, alleged that the blue flag rule did not apply to the making up of trains, and only applied where employés were engaged in repair work on cars, and, further, that, if mistaken in its not thus applying, it had been abrogated, so far as the work of making up trains was concerned, by the general use and custom that had obtained in the said yards during

all the time he was employed in his capacity as car inspector.

Appellant, by supplemental answer, denied these allegations, and further pleaded that, if there had grown up a custom among employés not to use the blue flag rule in the making up of trains, such custom obtained without its knowledge and without its consent, and that such rule was still actively in force. The evidence on all these material issues was in sharp conflict.

The case was submitted to the jury on special issues and, in response to these special issues the jury made the following findings, which are all supported by evidence in this record. These findings are: (1) The operatives of the cars that collided with the cars where appellee was at work caused the moving cars to strike the standing cars with great and unusual force and violence; (2) the operatives of the moving cars were guilty of negligence in so striking said standing cars; (3) this negligence was the proximate cause of appellee's injury; (4) appellee was guilty of negligence in his failure to put out the blue signals on the occasion in question; (5) the negligence of appellee in this respect was not the proximate cause of his injury; (6) appellee's injury was not the result of an accident; (7) appellee's injury did not result from a risk assumed by him; (8) appellee was not guilty of contributory negligence in going between the cars upon the occasion of his injury; (9) appellee suffered damages by reason of his injury in the sum of $25,915.

The trial court, in the charge to the jury, preceded the submission of these issues with correct definitions of negligence, contributory negligence, proximate cause, accident, and assumed risk, and, in submitting the issue as to appellee's damages correctly instructed the jury on the measure of damages.

Appellant, in line with its theory that no recovery could be had in this case, seasonably presented a requested charge for peremptory instruction in its favor, and duly excepted to its refusal. It also duly excepted to the court's submission of the special issues, and duly requested various special instructions, which were refused, and properly assigned error on each of the rulings in these respects.

Appellant filed its motion for judgment on the theory that the answer of the jury to special issue No. 4 to the effect that appellee was guilty of negligence in his failure to put out the blue signals upon the occasion when he was injured entitled it to judgment for the reason that the result of such finding, as a matter of law, established the fact that appellee was injured as a result solely of his own negligence, and duly excepted to the action of the court in overruling said motion. After the overruling of this motion appellant filed a motion to set aside the findings of the jury for the reason that such findings were contrary to and unsupported by the evidence, and specially as to the finding of the jury that appellee's negligence was not the proximate cause of his injury, and on the amount of damages, alleging that same was arrived at by lot, and excepted to the court's action in overruling such motion.

[1] The first contention of appellant is that the trial court should have given the requested instruction directing the jury to return a verdict for appellant, and that for the same reason this court should reverse and render this cause in its behalf. This contention is based upon the theory that, as the undisputed evidence showed that the said blue flag rule was promulgated for appellee's protection, as appellee knew of its existence and purpose, his failure to govern himself by its terms on the occasion in question was the sole proximate cause of his injury and precluded him from any recovery. We have carefully read the record, and have concluded that this assignment of error must be overruled. The evidence is undisputed that what is known as the blue flag rule above quoted had been promulgated by appellant, and that appellee knew its terms. It is a reasonable deduction that this rule was promulgated for the benefit and safety of those employés of appellant whose work came within its provisions. The evidence is in sharp conflict as to whether this rule applied to employés making up a train as distinguished from those employés who went in and about cars for the purpose of doing repair work. The need for protection for those engaged in the repair work was much greater than for those engaged in the work that appellee was doing at the time of the injury. An employé doing repair work was necessarily placed in a more hazardous position. His work would frequently call for him to be in a helpless position under a car where injury would necessarily result if the said car were moved in any manner. It appears from the record that the work appellee was doing could be done safely while cars were being switched into the train if they were moved against the train in the usual and customary manner in which this work usually was done, the train being held stationary by the power of the brakes against the force of the moving cars when they were moved in the customary manner. The switching crew engaged in making up this train knew that necessarily a car inspector was continually in and about the cars of the train that was being made up. This work had to be done within a limited time, and the different phases of the work necessarily had to go on at the same time, if this work was to be done in a practical and expeditious manner.

Appellee testified positively that during his years of experience in this kind of work in appellant's yards the blue signals had never been displayed in making up a train. Others of the switching crew testified virtually to the same effect, while others testified to the contrary. Appellee further testified to the

effect that the work of the making up of a train could not be done with the blue signals displayed.

The testimony of appellee is clearly to the effect that, at the time he received the injury, if the string of cars that were moved against the standing cars where he was working had been moved in the customary and ordinary way that obtained in appellant's yards, the standing cars would not have been moved, and his work would have progressed with safety to himself. These standing cars had their brakes set, and they were of such considerable number that, manifestly, before they would be moved with such speed as would have precluded appellee from protecting himself, they would had to have been struck with great force and violence.

The issue of negligence of appellant submitted for consideration by the jury was not whether appellant was guilty of negligence in moving the cars against the said standing cars, but whether it was guilty of negligence in moving the string of cars against the standing cars with great and unusual force and violence. Not only does the evidence raise the issue that the switching crew moving the said string of cars against the standing cars were charged with knowledge of the manner in which the work of making up a train was usually done, and must have anticipated that appellee was in and about said cars, but it also clearly raises the issue that said switching crew had actual knowledge that appellee was in such position. The blue signal would therefore have imparted to said switching crew no knowledge that the members did not already have, nor would its display have placed upon said switching crew any higher duty towards the safety of appellee than rested upon them by reason of their actual knowledge. The purpose of the rule was to notify switching crews moving cars against other cars that an employé was in and about said other cars, and to take the necessary steps that would secure his safety. This same injunction rested upon them when they possessed the same knowledge that would have been conveyed to them by means of the blue signal. The court did not err in refusing the peremptory instruction and in submitting the issue of negligence to the jury.

[2-4] Appellant insists, however, that, if the court did not err in refusing the peremptory instruction, nevertheless, under the finding of the jury, a judgment should have been entered in its favor. In response to special issue No. 4 the jury found that appellee was guilty of negligence in failing to put out the blue signals on the occasion of his injury.

The jury also found in response to special issue No. 5 that this negligence was not the proximate cause of appellee's injury; the specific contention being that, as appellee was negligent in not putting out the blue signal, it follows, as a matter of law, that such negligence was the proximate cause of his injury, and the court should not have submitted issue No. 5, and the finding thereon should not have been considered by the court; also, that said answer finds no support in the evidence.

The verdict of the jury pronouncing negligence on appellee's failure to protect himself with blue signals must be given its full significance when considered in the light of all the testimony bearing on this issue, and in the light of the finding of the jury that this negligence was not the proximate cause of the injury.

It must be borne in mind that a rule promulgated by the master either for the manner in which his work shall be done by his servant or for the safety of the servant has not the force of a statute, and hence its violation by the servant in either instance ordinarily is not negligence per se. It is possible for a rule for the safety of the servant in performing the work of the master to be violated and the servant be left blameless so far as either causing or contributing to cause his own injury.

In considering the significance and effect of the jury's finding on special issue No. 4, and the significance and effect of the jury's finding on special issue No. 5, it must be borne in mind that it is the court's duty to harmonize the two findings if such can be done by giving to each a reasonable construction in the light of the evidence on which the jury acted in making such findings. These two findings cannot be harmonized if the entire evidence surrounding the issues passed upon by the two findings lead inevitably to the conclusion that appellee would not have been injured if he had placed the blue signals in conformity to the said rule. On the other hand, if the evidence, though conflicting, is such as to warrant the jury in believing that, if the blue signal had been displayed, nevertheless appellant's operatives would have been guilty of the negligence found by the jury in response to special issue No. 1, and appellee would have been injured, then the two findings would harmonize, and appellee's negligence would not be, as a matter of law, the proximate cause of his injury. The inquiry then is: Was there substantial evidence tending to show that appellee would have been injured if the blue signal had been displayed? Briefly stated, the undisputed evidence is that a car had been erroneously switched into the cars about which appellee was working. The error was discovered immediately by the switching crew, and its members at once proceeded with the string of cars then attached to the switch engine to remove this car. This had to be done before this crew could proceed with the work of making up the train. The members of this crew knew that appellee was engaged in his work of coupling up the air hose on the train being made up. With this knowledge,

and the consequent duty thereby placed on them, they caused the string of cars they were moving to strike with unusual force and violence the cars about which appellee was at work, moving them with such rapidity as rendered it impossible for appellee to prevent the injury received. It was such a manifest disregard of their duty and appellee's safety that the jury, in our opinion, was warranted in the conclusion that the conduct of the switching crew would not have been changed in reference to the movement of the said string of cars had the blue signal been displayed. The jury could have concluded that, if these employés did not regard their actual knowledge and the duty it imposed, it could not be said that they would have regarded the knowledge that the blue flag imparted to them and the duty thus imposed.

There was ample evidence to have sustained the jury in finding that the said blue flag rule was not applicable to employés performing the duties appellee was doing in making up a train. The finding of the jury that it was negligence on the part of appellee not to have placed the blue signals before he began his work is not necessarily a finding that said rule did apply to such work. The jury might have believed that an ordinarily prudent person would have placed the signal before he entered upon such work, regardless of the existence of the rule, and that by reason of the nonapplication of the rule to such work there was nothing forbidding the switching crew moving the said string of cars on the track and against the said cars about which appellee was at work, provided such movement of said cars was made in the customary and ordinary way that prevailed in such work. The cars were not moved in such way, and appellee suffered an injury that he would not have suffered but for the violation of a duty to him by said switching crew.

In our opinion, the evidence on this issue is sufficient to support the conclusion that the cars about which appellee was working were sufficiently held by their brakes to secure them against any movement that would be caused by the usual and customary way in which cars were moved against them, and that appellee would have done his work safely but for the negligent movement of cars by the switching crew. Appellee cannot be held to have foreseen the negligence of appellant's operatives that resulted in his injury, but had a right to place himself in any position in reference to said standing cars that would be safe to him if such operatives performed their duty in moving other cars against those about which he was working, and that his injury was solely brought about by the failure of these operatives to perform their duty. This we construe to be the effect of the findings of the jury in reference to the first five special issues submitted by the court. This conclusion is reinforced by the additional findings of the jury on special issues Nos. 7 and 8 to the effect that appellee's injury did not result from a risk assumed by him, and was not the result of his contributory negligence in going between the cars on the occasion of his injury. This conclusion harmonizes with all the findings of the jury, and is sustained by the evidence in the case. Appellant's assignments of error in respect to this issue are overruled.

The facts of this case distinguish it from the case of H. & T. C. Ry. Co. v. Ravanelli (Tex. Sup.) 133 S. W. 424, and the other cases relied upon by appellant to support its contention.

In the Ravanelli Case, the most favorable one for appellant, the injured employé was a car repairer and at the time of his injury was under the car repairing a defect caused by a broken bolt. At the time of his injury the railway company had a blue flag rule similar to the rule in the instant case. Ravanelli had not protected himself by placing the signal required by this rule. The record of that case does not disclose that there was any evidence questioning the application of the rule to the work in which Ravanelli was engaged. There was no testimony showing that the operatives of the cars that caused his injury either knew or were charged with knowledge that Ravanelli was under the car at the time it was caused to be moved and he suffered his injury; nor was there any testimony that the customary and ordinary movement of the cars causing the injury could have been made with safety to Ravanelli. The same distinguishing features are present in the other cases cited by appellant in its brief.

[5] Appellant contends that the verdict of the jury is so excessive in amount as to evidence that the jury was actuated by malice or prejudice or other improper motives, and that by reason thereof the cause should be reversed and remanded. It makes the further contention that, if mistaken in its right to have the cause reversed and remanded because of the excessiveness of the amount of the verdict, this court should require a remittitur of a substantial sum and render a judgment for a sum that would be reasonable compensation for the injury. While the amount found by the jury is very high, and approaches the border line of excessiveness, we are of the opinion that such condition is not presented that calls either for the reversal and remanding of the cause or to demand a remittitur. The evidence discloses that appellee at the time of his injury was earning approximately $175 per month; that he was 44 years of age, had spent several years of his life in the work he was doing at the time of his injury, and had not fitted himself for any line of employment that would ordinarily be open to one in his crippled condition. From this the jury had the right to conclude that his earning capacity was very

greatly impaired by the injury. If compensation for the time lost and the impaired earning capacity were the only elements of damage that the jury was authorized to consider, the amount found by the jury would be considered as excessive. The physical pain endured by appellee and the mental suffering that came to him by reason of his being changed by the injury from a strong, vigorous, robust manhood into a permanent crippled condition are elements that the jury are required to consider in passing upon the issue of his compensation. The evidence discloses that appellee was caused to suffer an unusual amount of physical pain. The attending surgeon, acting with commendable zeal to leave appellee with as much of the injured limb as was possible, and thereby lessen the extent of his permanent injury, did not at the first operation amputate as much of said limb as afterwards proved to be necessary, and, after several days of intense suffering endured by appellee, the second operation was deemed necessary. The unanticipated shortening of the larger bone in the amputated limb will in all likelihood result in the necessity of a third operation before appellee can avail himself of the use of an artificial limb. The jury was authorized from the evidence to draw such a conclusion. Appellee still endured physical pain at the time of the trial. The case, therefore, presents some unusual and aggravated features in respect to the amount of money the jury would be authorized to find would compensate appellee for the physical and mental pain suffered. by him on account of the injury. In consideration of all these facts, we have reached the conclusion that the finding of the jury on the amount of damages does not present a case that requires this court to disturb the finding of the jury. The assignment of error on this issue is overruled.

[6] It is urged by appellant that the case should be reversed and remanded because of the manner in which the jury arrived at the amount of compensation. This was made a subject of inquiry by the trial court before any action was taken on the motion for a new trial. Ten of the jurors appeared before the court to testify on this issue. From their evidence it appears that after there had been considerable discussion of the amount to be fixed by the jury one of its members suggested that each one write down his individual judgment as to amount, and that this be divided by 12, and see whether the sum reached in this manner could be made a basis for the finding of a jury. This was done, and when the aggregate amount was divided by 12 the sum reached was. $25,915, the sum actually returned by the jury. After this sum was ascertained in the manner described it was proposed by some member of the jury that they find this amount as an answer to the special issue calling for such finding. Each member then agreed to said

sum as the amount of the verdict, and it was so returned. Each of these 10 jurors made it plain that there was no agreement before the ascertainment of the sum in the manner described that it should be their verdict. The evidence is to the effect that this was not even suggested previous to its ascertainment. It therefore appears with certainty that the sum returned by the jury was not arrived at through any method that could be described as "arriving at a verdict by lot." This assignment of error is overruled.

There are other assignments of error in reference to the admission of evidence which we have carefully examined and find without merit.

[7] There are other assignments of error in respect to the refusal of special requested issues. We have examined these assignments carefully, and find that those requested issues that were material to the case were submitted by the court in the main charge, and these as well as other assignments are overruled.

Finding no reversible error, it is the opinion of the court that this cause should be affirmed.

Affirmed.

## On Motion for Rehearing.

[8] In a very elaborate and able motion for rehearing appellant, among other things, urges that this court was in error in finding as a fact that appellant's switching crew, on the occasion of appellee's injuries, knew, and, under the manner in which trains were made up in said yards, was charged with knowledge, that appellee at the time of the collision was engaged in his work in coupling up the air hose of the cars collided with. This finding was in deference to the findings of the jury on special issues Nos. 1, 2, and 3 submitted by the court. While there was evidence to the contrary, this finding is amply suported by the testimony of appellee and the testimony of two of appellant's switching crew. Appellee's testimony is very positive that for 12 or 13 years he had worked for appellant in the same capacity, and during all this time "the usual method was coupling the air as trains were made up."

Pelly, the foreman of the switching crew, testified, in effect, that appellee's part of the work of making up the train was coupling up the air, and he did this as the train was being made up.

Barr, another member of the switching crew, testified that it was appellee's business to couple the air; that he did not see appellee at the moment of the collision, but knew that that was his work, and when he heard him "holloa" he had reason to believe it was appellee who was injured, as he supposed he was down that way somewhere, that being where his place was.

The above statement of testimony from the record is amply sufficient to sustain the finding of fact about which complaint is made. In fact, when the testimony bearing on this issue is considered as a whole, together with the circumstances surrounding the unfortunate accident, we think the conclusion is inevitable that the switching crew knew that appellant was engaged in his work of coupling up the air hose during the time the train was being made up and at the time of the collision of the cars and train that resulted in appellee's injury.

Complaint is also made that the court ignored the assignment of error based on the argument of counsel for appellee. This assignment was carefully considered, and the conclusion reached that it was without merit, and to this conclusion the court adheres. All the other matters raised by the motion for rehearing have been carefully considered, and are overruled.

The motion for rehearing is denied.